1    LYNNE C. HERMLE (STATE BAR NO. 99779)
     ORRICK, HERRINGTON & SUTCLIFFE LLP
2    1000 Marsh Road
     Menlo Park, CA 94025
3    Telephone:    650-614-7400
     Facsimile:    650-614-7401
4    lchermle@orrick.com

5    KATIE E. BRISCOE (STATE BAR NO. 287629)
     ORRICK, HERRINGTON & SUTCLIFFE LLP
6    400 Capitol Mall, Suite 3000
     Sacramento, CA 95814-4497
7    Telephone:    916-329-7944
     Facsimile:    916-329-4900
8    kbriscoe@orrick.com

9    Attorneys for Defendants
     MICROSOFT CORPORATION AND MARK WEISS
10
     *(Caption continues on next page)*
11

12                   UNITED STATES DISTRICT COURT

13                 DISTRICT OF CALIFORNIA NORTHERN

14                        SAN JOSE DIVISION

15

16   BRYAN GOLDEN, an individual                 Case No.

17                Plaintiff,                      **NOTICE OF REMOVAL UNDER 28
                                                  U.S.C. §§ 1332, 1441 AND 1446 BY
18        v.                                      DEFENDANTS MICROSOFT
                                                  CORPORATION AND MARK WEISS**
19   MICROSOFT CORPORATION, Washington
     Corporation; MARK WEISS, an individual;
20   IZUMI KAWAHARA, an individual; STEVE
     MICZAK, an individual; GARRETT
21   FAULKNER, an individual; and Does 1-20,

22                Defendants.

23

24

25

26

27

28

KATE JUVINALL (STATE BAR NO. 315659)
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
Telephone:      + 213 629-2020
Facsimile:       + 213 612-2499
kjuvinall@orrick.com

LOREN HAMPTON (SBN 348640)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:      (415) 773-5700
Facsimile:      (415) 773-5759
lhampton@orrick.com

Attorneys for Defendants
MICROSOFT CORPORATION AND MARK WEISS

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF BRYAN GOLDEN AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants Microsoft Corporation and Mark Weiss remove the above-captioned action from the Superior Court of the State of California in and for the County of Santa Clara, to this Court pursuant to 28 U.S.C. sections 1332, 1441 and 1446, and state that the removal is proper for the reasons stated below.

## I.    <u>BACKGROUND</u>

1.    While employed with Microsoft in a manager position, Plaintiff Bryan Golden was accused of inappropriate behavior by four members of his team. Microsoft investigated the complaints, substantiated them, and terminated Plaintiff's employment on June 28, 2021. Two years later, on June 27, 2023, in retaliation for complaining about Plaintiff, Plaintiff sued not only Microsoft, but the four individuals in their personal capacity.

2.    On June 27, 2023, Plaintiff filed a Complaint in the Superior Court of the State of California, County of Santa Clara, entitled *Bryan Golden v. Microsoft Corporation, et al.*, Case No. 23CV418357 (the "Complaint"). A true and correct copy of the Summons, Civil Cover Sheet, and Complaint are attached as **Exhibits A-C** to the Declaration of Kate Juvinall ("Juvinall Decl."). The allegations of the Complaint in the Action are incorporated by reference in this Notice of Removal without admission that any are true.

3.    The Complaint asserts eighteen causes of action against Microsoft and/or four individual defendants stemming from Plaintiff's employment with Microsoft. The Complaint alleges 14 causes of action against Microsoft for: (1) age discrimination in violation of the Fair Employment in Housing Act ("FEHA") (disparate treatment); (2) age discrimination in violation of FEHA (disparate impact); (3) sex and gender discrimination in violation of FEHA (disparate treatment); (4) sex and gender discrimination in violation of FEHA (disparate impact); (5) harassment and hostile work environment based on age in violation of FEHA; (6) harassment and hostile work environment based on sex and gender in violation of FEHA; (7) failure to prevent discrimination, harassment and retaliation in violation of FEHA; (8) wrongful termination in violation of public policy; (9) breach of written contract; (10) breach of the covenant of good

faith and fair dealing; (11) intentional infliction of emotional distress; (12) negligence (including negligent infliction of emotional distress); (13) negligence *per se*; and (14) unlawful and/or unfair business practices.

4.  The Complaint also names Plaintiff's former subordinate co-workers (who reported to him) Mark Weiss, Izumi Kawahara, Steve Miczak, and Garrett Faulkner as individual defendants ("Individual Defendants"). Plaintiff asserts nine causes of action against them in their individual capacities: (1) harassment and hostile work environment based on age in violation of FEHA; (2) harassment and hostile work environment based on sex and gender in violation of FEHA; (3) inducing breach of contract; (4) intentional interference with contractual relations; (5) intentional interference with prospective economic advantage; (6) negligent interference with prospective economic advantage; (7) intentional infliction of emotional distress; (8) negligence (including negligent infliction of emotional distress); and (9) negligence *per se*.

5.  The Complaint asserts five causes of action against DOES 1-20: (1) harassment and hostile work environment based on age in violation of FEHA; (2) harassment and hostile work environment based on sex and gender in violation of FEHA; (3) intentional infliction of emotional distress; (4) negligence (including negligent infliction of emotional distress); and (5) negligence *per se*.

6.  Microsoft was served with the Summons, Civil Cover Sheet, Complaint, Alternative Dispute Resolution Information Sheet, and Civil Lawsuit Notice on July 19, 2023. Declaration of Yana Rosenbloom ("Rosenbloom Decl.") ¶ 8, Ex. A; Juvinall Decl. ¶ 5, Ex. D.

7.  Mr. Weiss was served with the Summons, Civil Cover Sheet, Complaint, Alternative Dispute Resolution Information Sheet, and Civil Lawsuit Notice on July 27, 2023. Declaration of Mark Weiss ("Weiss Decl.") ¶ 3, Ex. A; Juvinall Decl. ¶ 6, Ex. E.

8.  The other three individual Defendants (Ms. Kawahara, Mr. Miczak, and Mr. Faulker) have not been served with the Summons and Complaint. Declaration of Steve Miczak ("Miczak Decl.") ¶ 3; Declaration of Izumi Kawahara ("Kawahara Decl.") ¶ 3; Declaration of Garrett Faulkner ("Faulkner Decl.") ¶ 3. Even though a defendant who has not yet been served in the action does not join in or consent to the removal, Mr. Miczak, Mr. Faulkner, and Ms.

Kawahara nonetheless consent. Miczak Decl. ¶ 11; Kawahara Decl. ¶ 11; Faulkner Decl. ¶ 10; 28 U.S.C. § 1446(b)(2)(A); *Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011). Moreover, unidentified "Doe" defendants need not join in a Notice of Removal. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

9.     In compliance with 28 U.S.C. § 1446(a), the foregoing Exhibits A-E to the Juvinall Declaration and Exhibits A to the Rosenbloom and Weiss Declarations represent the entirety of all pleadings, process, and orders served upon or filed by Defendant Microsoft or Defendant Weiss in the Superior Court action.  Juvinall Decl. ¶ 9.

## II.     TIMELINESS

10.     This Notice of Removal is timely filed under 28 U.S.C. § 1446(b) as it has been filed within 30 days of receipt of the Summons and Complaint by Defendant Microsoft (served on July 19, 2023) and within 30 days of receipt of the Summons and Complaint by Mr. Weiss (served on July 27, 2023). *See* Rosenbloom Decl. ¶ 8, Ex. A; Weiss Decl. ¶ 3, Ex. A.

## III.     JURISDICTION AND GROUNDS FOR REMOVAL

11.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because (i) Plaintiff and Defendant Microsoft are citizens of different states, and (ii) the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, the action is removable under 28 U.S.C. § 1441(a)

### A.     Diversity of Citizenship.

#### 1.     Plaintiff is a Citizen of California

12.     Citizenship of a natural person is established by domicile. 28 U.S.C. §1391(c)(1); *see also Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A person's domicile is established by physical presence and an intent to remain there indefinitely. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986); *Kanter*, 265 F.3d at 857.

13.     In the Complaint, Plaintiff asserts that he is a resident of the State of California. *See* Complaint ¶ 4, Ex. A to Juvinall Decl. ("Compl.") ("Golden, at all relevant times hereto, was and is a resident of Santa Clary County, California"). In addition, Plaintiff's employment records

indicate that Plaintiff resided in California at the time of his separation. Rosenbloom Decl. ¶ 5. Further, a LexisNexis SmartLink Person Report run on Plaintiff confirmed that Plaintiff has continued to reside and currently resides in California. Juvinall Decl. ¶ 10. Based on the foregoing, Defendants are informed that Plaintiff is still a citizen of the State of California and has no intent to leave California. *See Smith v. Simmons*, 2008 WL 744709 at *7 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile). Thus, Plaintiff has been and is domiciled in the State of California and has been and is a citizen of the State of California as of the date of the filing of his Complaint, and at the time of this removal.

### 2.      Defendant Microsoft is a Citizen of Washington

14.      For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities. *The Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010). A corporation's principal place of business will typically be where the corporation maintains its headquarters. *Id.*

15.      Microsoft is a Washington corporation, organized under the laws of the State of Washington, and was so organized as of June 27, 2023, the date the Complaint in this action was filed. Rosenbloom Decl. ¶ 3.

16.      Microsoft's principal place of business is currently, and was as of June 27, 2023, located in Redmond, Washington. *Id.* Microsoft's corporate headquarters are located at One Microsoft Way, Redmond, WA 98052, which is where its senior executives (including its officers, directors, corporate vice presidents, Executive Vice President of Human Resources, and General Counsel) are based, where it exercises day-to-day control over its business, where all decisions relevant to Microsoft's business activities in the United States are made, directed, controlled, and/or coordinated, and where it performs the vast majority of its executive and administrative functions. *Id.* All resolutions of Microsoft's Board of Directors, including resolutions regarding critical corporate decisions, are signed and passed in Washington. *Id.*

Accordingly, Microsoft is a citizen of Washington, and not a citizen of California.

### 3. The Individual Defendants' Citizenship Must Be Disregarded Because They Were Fraudulently Joined

17.   **The Individual Defendants' Citizenship**. Plaintiff alleges that the Individual Defendants reside in California. Compl. ¶¶ 6-9. However, their citizenship must be disregarded for purposes of this Notice of Removal, and complete diversity exists because the Individual Defendants have been fraudulently joined.

18.   **Fraudulent Joinder**. The Individual Defendants' alleged citizenship must be disregarded because they are sham defendants against whom Plaintiff cannot establish a cause of action. Joinder "of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (internal marks omitted). A defendant is "entitled to present the facts showing the joinder to be fraudulent." *Id.* As set forth above, Plaintiff asserts nine causes of action against the Individual Defendants, all of which are incurably deficient.

### Harassment and Hostile Work Environment Based on Age, Gender, and Sex (Causes of Action 5-6):

19.   Plaintiff fails to allege (and cannot alleged) *any* facts against *any* of the Individual Defendants that amount to "harassing" conduct, whether based on age or gender. Plaintiff asserts that the Individual Defendants reported baseless claims against him to Microsoft to get him fired "in significant part because Golden is an older man." Compl. ¶ 30. By law, that is personnel management activity, which cannot constitute harassment and is legally insufficient. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65 (1996). To state a claim for hostile environment harassment against the Individual Defendants, Plaintiff must allege that each Individual Defendant engaged in (1) harassing conduct, (2) based on protected criteria, and (3) which was sufficiently "severe or pervasive" to alter conditions of employment and create an "abusive

working environment." *Lyle v. Warner Bros. Tele. Prod'ns.*, 38 Cal.4th 264, 279 (2006). Plaintiff does not (and cannot) meet any of the pleading criteria.

20.    First, Plaintiff does not allege any harassing conduct against the Individual Defendants. California courts define "harassment" under the FEHA as conduct outside the bounds of personnel management. *See Janken*, 46 Cal. App. 4th at 65 ("Harassment… consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management"); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590 (1989) (dismissing FEHA harassment claim: "by its very nature, sexual harassment in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society"). Harassment "is **not conduct of a type necessary for management of the employer's business.**" CACI No. 2523 (emphasis). Instead, it includes "offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance." *See* www.eeoc.gov/harassment.

21.    Plaintiff does not allege that the Individual Defendants made jokes, slurs, or threats about his age or gender, or engaged in any "harassing" behavior as recognized by law. And, he cannot amend his Complaint to do so without running afoul of FRCP 11 as the Individual Defendants never harassed Plaintiff in any way, let alone related to his age, sex, or gender. *See* Weiss Decl. ¶¶ 5-8; Miczak Decl. ¶¶ 6-8; Kawahara Decl. ¶¶ 5-8; Faulkner Decl. ¶¶ 5-7. Rather, the only conduct Plaintiff attributes to the Individual Defendants is that they allegedly tried to get him fired by using Microsoft's internal reporting policy to complain about *his* harassment of *them*. But, as a matter of law, that is not harassment. In *Janken*, the court noted a conflict would arise if employees were faced with the prospect of liability for complying with the employer's policies, rejecting the idea of individual employee liability for conduct in compliance with corporate personnel policies. *Janken*, 46 Cal. App. 4th at 78 ("The corporate policy can only be implemented by individuals, hence the construction urged by plaintiffs would regularly place the personnel management risks of a corporate enterprise upon individuals who are merely employees of the enterprise"). *Janken* outlined personnel management tasks that do not fit the definition of harassment and held that the allegations that an employee "accused plaintiff of not

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

1    properly maintaining a time card…. Fail to plead facts which, if true, could legally constitute

2    harassment. All the actions alleged here are within the realm of properly delegated personnel

3    management authority." *Id.* at 79.

4         22.    Importantly, in *Sheppard v. Freeman*, the court extended *Janken* to co-employees,

5    and held a co-employee privilege exists when, like here, a co-employee reports another co-

6    worker's conduct under the employer's policies. 67 Cal. App. 4th 339, 345 (1998). Under

7    *Sheppard*, an employee or former employee cannot sue co-employees based on that conduct,

8    which is inherently personnel management. *Id.*

9         23.    The reporting of potential misconduct that leads to a company investigation, even

10   if the manager disagrees with the substance of the report or believes it improperly motivated,

11   cannot constitute harassment as a matter of law because it constitutes personnel action necessary

12   for the company's business. *See* EEOC.gov/harassment ("Employers should strive to create an

13   environment in which employees feel free to raise concerns and are confident that those concerns

14   will be addressed"); *Janken*, 46 Cal. App. 4th at 80 ("If personnel management decisions are

15   improperly motivated, the remedy is a suit against the employer for discrimination"). Plaintiff

16   seeks to do precisely what *Janken* and its progeny rejected—impose an unwarranted liability for

17   employees who have complied with the personnel practices of their employer. *Id.* Because

18   Plaintiff cannot amend the Complaint to plead around this rule, the harassment claims are

19   incurably deficient.

20        24.    Second, the harassment claims against the Individual Defendants fail because

21   Plaintiff does not allege a single fact, other than vague conclusions without any factual basis,

22   tying the alleged harassment to gender or age animus. *See e.g.*, *Jones v. Dept. of Corrections &*

23   *Rehabilitation*, 152 Cal. App. 4th 1367, 1378 (2007) ("The absence of the nexus between the

24   alleged harassment and Jones's gender negates her FEHA claim"). Plaintiff makes no allegations

25   whatsoever to show a nexus between the alleged harassment and his sex or gender. And his

26   allegation that the Individual Defendants were "on information and belief" younger than him—

27   with nothing more—is likewise insufficient Compl. ¶ 23. *Blantz v. Cal. Dep't of Corr. & Rehab.,*

28   *Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (allegations pled "on

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

1   information and belief" that are not supported by further factual assertions are insufficient to state

2   a claim); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

3   (recognizing that the court does not need to "accept as true allegations that are merely conclusory,

4   unwarranted deductions of fact, or unreasonable inferences").

5        25.    Third, Plaintiff fails to show that the alleged harassment by any Individual

6   Defendant was "'severe or pervasive' to alter conditions of employment and create an 'abusive

7   working environment.'" *Lyle*, 38 Cal.4th at 279. Plaintiff's perception is insufficient because the

8   legal standard incorporates an objective component: "The working environment must both

9   subjectively and objectively be perceived as abusive…[and] [w]hether the workplace is

10  objectively hostile must be determined from the perspective of a reasonable person with the same

11  fundamental characteristics." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995).

12  There are no allegations of pervasive conduct by any of the Individual Defendants, and certainly

13  the reporting of alleged misconduct (which, as the Complaint and declarations of the Individual

14  Defendants show, was through a channel that led to an investigation by Microsoft) cannot

15  plausibly constitute objectively severe harassment. Compl. ¶¶ 30-31; Weiss Decl. ¶¶ 7-8; Miczak

16  Decl. ¶ 8; Kawahara Decl. ¶ 8; Faulkner Decl. ¶ 7; *see also Washington v. Lowe's HIW Inc.*, 75 F.

17  Supp. 3d 1240, 1251 (N.D. Cal. 2014) (dismissing Title VII and FEHA sex-harassment claims

18  where plaintiff's allegations involved only ordinary workplace annoyances that are not

19  actionable, and isolated comments that were not sufficiently pervasive); *Soares v. California*, No.

20  2:16-00128 WBS EFB, 2016 WL 3519411, at *3-4 (E.D. Cal. June 27, 2016) (dismissing Title

21  VII and FEHA harassment claims where conduct involved "personnel management actions" such

22  as "discipline, negative comments about former female judges, overly scrutinized work that was

23  inconsistent with [plaintiff's] actual work, undeservedly poor performance evaluations, and

24  'weekly tests and work tallies'"); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110-11 (9th Cir.

25  2000) (no hostile environment where supervisor referred to females as "castrating bitches,"

26  "Madonna," or "Regina" in front of plaintiff and called plaintiff "Medea").

27  ///

28  ///

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332,
1441 AND 1446

**Inducing Breach of Contract (Cause of Action 11):**

26.     There can be no claim for inducing breach of contract against the Individual Defendants where, as here, there was no underlying breach of contract. CACI No. 2200. It is undisputed that the contract between Plaintiff and Microsoft was an at-will employment agreement under which Microsoft was free to terminate Plaintiff's employment. Compl. ¶ 17, Ex. 3. Nothing in the contract states that Microsoft would comply with its equal employment opportunity or Anti-Harassment and Anti-Discrimination policies. *Id.* Thus, even if Plaintiff could establish that Microsoft's firing of him was discriminatory, that would not amount to a breach of the contract.

27.     Further, even if Microsoft had breached its contract with Plaintiff (it did not), Plaintiff's claim would nonetheless fail against the Individual Defendants because agents and employees of a corporation cannot induce breach of the corporation's contracts when, as alleged and admitted here, the agents or employees are working within the scope of their employment with the company. *See* Compl. ¶ 11 ("each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency and employment"); *Shoemaker v. Myers*, 52 Cal.3d 1, 24-25 (1990) ("corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract. …. Thus, there is no viable 'inducement of breach of contract' or 'interference with economic advantage' that is distinguishable from a cause of action for breach of contract"); *Jenkins v. Inglewood Unified School Dist.*, 34 Cal. App. 4th 1388, 1395 (1995) ("Since the named defendants were agents or employees of the contracting party they cannot be held liable for contract interference."); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576 (1973) ("ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged").

28.     Lastly, to succeed on this claim as against the Individual Defendants (his former coworkers), Plaintiff would have to show proximate cause—that Microsoft breached its contract

with him **because of** the Individual Defendants' alleged misreporting to Microsoft. *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 997-98, (1977). He cannot do so. Plaintiff admits that his confrontation with an employee named "Frank" prompted Microsoft's investigation into him, and Plaintiff suspects he was terminated because of the investigation into that incident as well as others. Compl. ¶¶ 24-25, 27-31. He admits he does not know what Microsoft's investigation found or why he was ultimately terminated. Compl. ¶ 31. Even more, he cannot show proximate cause because he admits that his termination was because of an intervening act—an "HR investigation." *Id.* Thus, it was not the Individual Defendants' reports that caused Microsoft to fire Plaintiff, but rather Microsoft's determination that their reports were substantiated.

29. Plaintiff cannot cure these defects by amending the Complaint.

**<u>Intentional Interference With Contractual Relations (Cause of Action 12):</u>**

30. To state a claim for intentional interference with contractual relations, a plaintiff must plead: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *I-CA Enters., Inc. v. Palram Americas, Inc*., 235 Cal. App. 4th 257, 289 (2015). As discussed below, Plaintiff has not pleaded these elements and cannot amend the Complaint as to the Individual Defendants to cure the defects.

31. First, this claim fails against the Individual Defendants because the relationship interfered with must be between Plaintiff and a **third party**. *Id.* "The tort duty not to interfere with the contract *falls only on strangers*—interlopers who have no legitimate interest in the scope or course of the contract's performance . . . a party to a contract owes no tort duty to refrain from interference with its performance." *Applied Equipment Corp. v. Litton*, 7 Cal.4th 503, 514 (1994) (emphasis added). As set forth above, as a matter of law, agents and employees of a company cannot interfere with the company's own contractual relationships. *Shoemaker*, 52 Cal.3d at 24-25; *Jenkins*, 34 Cal. App. 4th at 1395; *Dryden*, 65 Cal. App. 3d at 998-99. Plaintiff admits that the Individual Defendants acted within the course and scope of their duties. *See* Compl. ¶ 11.

Accordingly, the Individual Defendants could not have "interfered" with Microsoft's contractual relationship with Plaintiff.

32.     Second, this claim fails because Plaintiff has not alleged that the Individual Defendants knew the details of Plaintiff's employment agreement at the time of the alleged breach. Nor can he. *See* Weiss Decl. ¶ 10; Miczak Decl. ¶ 10; Kawahara Decl. ¶ 10; Faulkner Decl. ¶ 9. To plead intentional interference of contractual relations, Plaintiff must allege **facts** showing that the Individual Defendants were "sufficiently aware of **the details** of the [contract] to form an intent to harm it." *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10-11 (2009) (affirming dismissal of intentional interference with contractual relations claim because plaintiff could not show defendant knew a contract was still valid) (emphasis added). But Plaintiff pleads only the conclusory allegation that "the Individual Defendants knew of the existence of this employment agreement because they worked at Microsoft on the same team as Golden," which is insufficient. *Id.*; *see also Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th 579, 596-97 (2012) (no interference claim without establishing knowledge of the specific contract terms at issue).

33.     Third, Plaintiff pleads no facts showing that the Individual Defendants intended to interfere with any contract, or how their purported conduct in raising concerns was *designed* to induce a breach of Plaintiff's contract with Microsoft. Indeed, Plaintiff does not allege that Microsoft fired him because of the Individual Defendants' reports; instead, he admits that Microsoft terminated him because of its investigation. Compl. ¶ 31. His allegations fall far short of the requirement that the Individual Defendants knew that a breach of the (unknown) contract was "a necessary consequence" of their actions. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. App. 4th 1134, 1155-56 (2003) (Plaintiff must plead facts showing breach of contract was "known . . . to be a necessary consequence of [this] action"). Even if the Individual Defendants had complained to Microsoft with the intent or design to get Plaintiff fired (which is untrue), terminating Plaintiff's employment did not result in a breach of contract, as set forth above, nor did it render Plaintiff's ability to perform under the contract more burdensome or expensive. *See* Rest. 2d, Torts § 766A. There can be no intentional interference with contractual relations where

Plaintiff fails to show that there was an actual breach or disruption of the contractual relationship. *Id*.

**Intentional Interference With Prospective Economic Advantage (Cause of Action 13):**

34.     The elements of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to plaintiff; (2) defendant's knowledge of that relationship; (3) intentional wrongful acts on the part of defendant designed to disrupt that relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts. *Della Penna v. Toyota Motor Sales, U.S.A., Inc*., 11 Cal.4th 376, 380 n.1 (1995).

35.     Plaintiff must plead, first and foremost, the existence of an economic relationship between him and **some third party**, with the probability of future economic benefit to him. *Korea Supply*, 29 Cal.4th at 1163. As set forth above, agents and employees of a company cannot interfere with the company's own business relationships. *Shoemaker*, 52 Cal.3d at 24-25; *see*, *supra*, paragraph 27. Plaintiff's claim fails because, under well-settled California law, he has not alleged that the Individual Defendants interfered with an economic relationship between Plaintiff and a third party.

36.     A plaintiff seeking to recover for alleged interference with prospective economic relations also has the burden of pleading and proving that the interference was wrongful by some legal measure other than the fact of the interference itself. *Della Penna*, 11 Cal.4th at 392-93. An act is not independently wrongful merely because defendant acted with an improper motive. *Korea Supply*, 29 Cal.4th at 1158. An act is independently wrongful if it is unlawful. *Id.* at 1159. Here, Plaintiff cannot allege any unlawful act by any Individual Defendant. Plaintiff's sole allegation, that the "Individual Defendants' actions were independently wrongful because they violated the FEHA and constituted a material misrepresentation to Microsoft" is insufficient not only because of its conclusory nature, but also because, as shown above, he has not and cannot allege a FEHA harassment claim. *See* paragraphs 19-25, *supra*.

///

37.     Nor does Plaintiff plead, as he must, that each Individual Defendant could have known that a complaint raised to Microsoft, pursuant to Microsoft's policies that called for and resulted in an actual investigation, would lead to Plaintiff's termination. *See Korea Supply*, 29 Cal.4th at 1165 ("At the very least, a defendant must know that its action is substantially certain to interfere with the plaintiff's business expectancy"). Plaintiff cannot amend the Complaint to assert the Individuals had such knowledge because they did not. *See* Weiss Decl. ¶¶ 8-9; Miczak Decl. ¶¶ 8-9; Kawahara Decl. ¶¶ 8-9; Faulkner Decl. ¶¶ 7-8.

38.     Lastly, to succeed on this claim, Plaintiff must show causation—that Microsoft terminated Plaintiff's employment **because of** the Individual Defendants' alleged misreporting to Microsoft. *Della Penna*, 11 Cal.4th at 392-93. But, as set forth above, he cannot do so because he admits his employment was terminated, at least in part, because of Microsoft's investigation into a complaint by an employee named "Frank," who is not a party to this action. Compl. ¶¶ 24-25, 31. And, even so, it was not the Individual Defendants' reports that caused Microsoft to fire Plaintiff, but rather the determination that their reports were substantiated.

### **Negligent Interference With Prospective Economic Advantage (Cause of Action 14):**

39.     To state a claim for negligent interference with prospective economic advantage, Plaintiff must plead:  (1) an economic relationship between plaintiff and a third party with the probability of future economic benefit to plaintiff; (2) defendant's knowledge of that relationship; (3) negligent acts on the part of defendant to disrupt that relationship; (4) wrongfulness of the interference by legal measure other than the fact of the interference itself; (5) actual disruption of the relationship; and (6) economic harm to plaintiff proximately caused by the acts of defendant. *Margarita Cellars v. Pac. Coast Packaging*, 189 F.R.D. 575, 581 (N.D. Cal. 1999); *Nat'l Medical Trans. Network v. Deloitte & Touche*, 62 Cal. App. 4th 412, 439 (1998); *Della Penna*, 11 Cal.4th at 392-93.

40.     For the same reasons that Plaintiff's intentional interference with prospective economic advantage claim fails (e.g., no economic relationship with a third party, no independently wrongful conduct, and no causation), his negligent interference claim against the Individual Defendants fails, as well. *See*, *supra*, paragraphs 34-38.

41.     To state a negligent interference claim against the Individual Defendants, Plaintiff must allege an existing business relationship with the probability of future economic benefit to plaintiff—i.e., it must be "reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." *Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522-23 (1996). Baldly concluding that the "economic relationship" between Plaintiff and Microsoft "would have resulted in an economic benefit to [Plaintiff] had the relationship continued as expected" is not sufficient—particularly given that Plaintiff admits Microsoft was investigating his behavior for a separate reason (the incident with "Frank") to which he, at least in part, attributes his ultimate termination of employment. *See* Compl. ¶ 122. Thus, Plaintiff cannot allege that the continuation of his employment would have been reasonably probable absent the Individual Defendants alleged reports.

42.     The claim arises only when the defendant owes the plaintiff a duty of care. *Lange v. TIG Insurance*, 68 Cal. App. 4th 1179, 1187 (1998). The general rule in California is against finding such a duty, subject to one exception:  where there is a "special relationship" between the plaintiff and defendant. *Cabanas v. Gloodt Associates*, 942 F. Supp. 1295, 1308 (E.D. Cal. 1996); *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979). Here, Plaintiff has not alleged facts to support a "special relationship" between himself and the Individual Defendants.

**The Emotional Distress and Negligence Claims Are Barred By Workers' Compensation Exclusivity (Causes of Action 15-16):**

43.     Several of Plaintiff's claims also fail against the Individual Defendants and are incurable because of an additional fundamental defect: they are preempted by the worker's compensation framework. Lab. Code §§3600, 3602.

44.     An employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation. *Miklosy v. Regents of Univ. of Cal.*, 44 Cal.4th 876, 902-03 (2008). This is true regardless of the defendant's motive. The California Supreme Court has held that personnel-related actions—no matter now intentional, unfair, or outrageous—"are a normal part of the employment relationship" and, thus, emotional distress claims based on such activity are "covered by the workers' compensation exclusivity provisions." *Shoemaker*, 52

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 AND 1446

Cal.3d at 25. This applies even in the face of alleged misconduct. *See, e.g., Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 160-61 (1987) (employer's falsely accusing plaintiff of misconduct, subjecting him to a "kangaroo" disciplinary proceeding, publicly demoting him, giving him unfavorable tasks, and trying to force him to retire were found to be a normal part of the employment relationship such that workers' compensation remained plaintiff's exclusive remedy); *see also Sheppard*, 67 Cal. App. 4th at 345 (alleged false reports to employer about plaintiff employee were personnel management conduct); *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-14, 717 (1994) (normal employer actions causing injury do not fall outside scope of exclusivity rule merely by attributing to employer a sinister intention).

45.     California courts are also clear that all negligent torts arising in the employment context are barred by the workers' compensation framework. *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co*., 14 Cal. App. 4th 1595, 1606 (1993) (claims against employer for negligent supervision barred by workers' compensation exclusivity); *Kacludis v. GTE Sprint*, 806 F.Supp. 866, 870-71 (N.D. Cal. 1992) (dismissing negligent supervision claim as governed exclusively by workers' compensation); *Schaffer v. GTE, Inc.*, 40 F. App'x 552, 557-58 (9th Cir. 2002) (NIED claim preempted).

**The Tort Claims Impermissibly Seek to Sidestep the Ban on Individual Liability for Discrimination (Causes of Action 11-17):**

46.     California law is clear that individuals may not be held liable for discrimination. *Reno v. Baird*, 18 Cal.4th 640, 663 (1998). Plaintiff cannot sidestep this rule by channeling his allegations against the Individual Defendants through tort claims. Indeed, individuals may not be held liable for the type of personnel management conduct that the Individual Defendants allegedly engaged in. A coworker's reporting of complaints to an employer is personnel management activity protected by the co-employee privilege. *See Sheppard*, 67 Cal. App. 4th at 345 (plaintiff could not pursue interference with contract, interference with prospective economic advantage, or intentional infliction of emotional distress against coworkers, holding: "The interest in allowing all employees the freedom to act and speak in relation to personnel actions without the threat of debilitating litigation outweighs the risk that a few employees will act maliciously

and go undetected by their employers. Accordingly, we hold that an employee or former employee cannot sue individual employees based on their conduct, including acts or words, relating to personnel actions.").

47.    Like Plaintiff's allegations here, the plaintiff in *Sheppard* alleged his co-workers made false reports about his performance, leading to his termination. The court held that the co-workers' reports about the plaintiff were personnel management and that co-workers cannot be liable for such personnel management conduct. *Id.* Because Plaintiff's sole basis for his tort claims is that the Individual Defendants purportedly made false reports to Microsoft about his behavior, Plaintiff's claims fail.

### **Intentional Infliction of Emotional Distress (Cause of Action 15):**

48.    To state a claim for IIED, Plaintiff must plead facts showing: (1) extreme and outrageous conduct by each defendant, (2) intent to cause, or reckless disregard of the probability of causing, distress, (3) severe emotional suffering, and (4) actual and proximate causation. *See Cole*, 43 Cal.3d at 155 n.7. These requirements "are rigorous, and difficult to satisfy." *Yurick v. Superior Ct.*, 209 Cal. App. 3d 1116, 1129 (1989). In addition to workers' compensation exclusivity and the protected nature of personnel management conduct set forth above, Plaintiff's IIED claim against the Individual Defendants fails for lack of extreme and outrageous conduct and lack of severe emotional distress.

49.    Plaintiff's claim against the Individual Defendants first fails because he does not plead "extreme and outrageous conduct." The conduct at issue must be "so extreme and outrageous as to go beyond all possible bounds of decency . . . and to be regarded as atrocious, and utterly intolerable in a civilized community." *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 499 n.5 (1970). Mere indignities, insults, threats, annoyances, petty oppressions, and the like are not enough. *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009). Whether the alleged conduct is extreme and outrageous is a question of law; a plaintiff must allege with "great specificity" acts so extreme as to exceed all bounds of decency usually tolerated in a civilized community. *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 832 (2013); *Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 44 (1987).

50.   The action at issue here—co-employees reporting Plaintiff's inappropriate and unprofessional conduct to Microsoft—constitutes normal workplace interactions which, even if tortious or improperly motivated, do not constitute extreme or outrageous conduct as a matter of law. *Robb v. Rite Aid Corp.*, No. C 05-1932 CW, 2005 WL 8177559, at *4 (N.D. Cal. July 21, 2005) ("co-employees cannot be sued for tortious conduct undertaken in the course of job-related functions"); *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161-62 (2014) (upholding demurrer for IIED claim based on conduct "in the normal course of the employer-employee relationship"); *Miklosy*, 44 Cal.4th at 902 (conduct in normal course of employment relationship cannot give rise to IIED claim); *Janken*, 46 Cal. App. 4th at 80 (rejecting IIED claim based on alleged personnel management: "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination"); *Lee v. S. of Mkt. Health Ctr.*, No. 19-CV-06482-LB, 2020 WL 2219032, at *7 (N.D. Cal. May 7, 2020) (dismissing IIED and NIED claims).

51.   Plaintiff's IIED claim, like those dismissed in the cases above, relies upon disputes over his characterization of personnel management actions **by his co-employees,** the Individual Defendants. Plaintiff's contention regarding his termination—that the Individual Defendants made improper complaints to Microsoft to get him fired because he is an "older man"—fall squarely within the personnel management rulings dismissing IIED claims. *See* Compl. ¶ 128. As a matter of law, these personnel actions do not amount to outrageous conduct "regarded as atrocious, and utterly intolerable in a civilized society", and, ***as a matter of law***, cannot state an IIED claim. *Janken*, 46 Cal. App. 4th at 80.

52.   Plaintiff's IIED claim is similarly deficient against the Individual Defendants because he fails to plead facts showing he suffered "severe or extreme distress." The severe emotional distress necessary to state a claim for IIED is "emotional distress of such substantial quality or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Haley*, 871 F. Supp. 2d at 960 (dismissing IIED claim). Courts dismiss IIED claims even where plaintiffs allege "mental anguish, anxiety, and distress" if the allegations do not show that the alleged distress was so severe that no reasonable person should be expected to endure it.

1    *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 711-12 (N.D. Cal. 2014) (dismissing

2    IIED claim when plaintiff alleged defendants "cause[d] her mental anguish, anxiety, and distress"

3    and she "felt extremely emotionally distressed and pained, fearing for her job and livelihood");

4    *Nelson v. County of Sacramento*, 926 F. Supp. 2d 1159, 1172 (E.D. Cal. 2013) (dismissing IIED

5    claim; plaintiff failed to plead facts showing why his alleged emotional distress rose to level that

6    "no reasonable [person] . . . should be expected to endure it," where plaintiff alleged "pain, grief,

7    shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety,

8    disappointment, damage to reputation, and worry," because allegations were "conclusory" and

9    lacked "specific facts to show their nature and extent"); *Hatfield v. DaVita Healthcare Partners,*

10   *Inc.*, No. C 13-5206 SBA, 2015 WL 106632, at *4 (N.D. Cal. Jan. 7, 2015) (accord).

11   53.    Plaintiff alleges in a conclusory fashion that he has suffered "severe emotional

12   distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment . . ." *See*

13   Compl. ¶132. But he pleads no facts supporting these conclusions showing emotional distress of

14   the required substantial or enduring quality.

### Negligence (Including Negligent Infliction of Emotional Distress) (Causes of Action 16 and 17):

17   54.    Plaintiff's negligence claims against the Individual Defendants also fail under

18   well-settled law because: (1) they are based on personnel actions that as a matter of law cannot be

19   the basis of a negligence claim, and (2) Plaintiff cannot plausibly plead a duty of care.

20   55.    Plaintiff's negligence claims against the Individual Defendants are improperly

21   premised on intentional actions—alleged harassment. *See* Compl. ¶ 136 ("The Individual

22   Defendants had a duty to refrain from causing damages to Golden); ¶ 137 ("Defendants

23   negligently violated the above duties by discriminating against and harassing Golden"). As

24   discussed above, the only allegation of harassment is personnel management: that the Individual

25   Defendants followed Microsoft's policies and complained about Plaintiff's inappropriate conduct

26   to Microsoft. *See* paragraphs 19-25, *supra*. But, personnel decisions cannot be the basis of a

27   negligence-based claim as a matter of law because those decisions are necessarily intentional.

28   *Edwards v. U.S. Fid. & Guar. Co.*, 848 F.Supp. 1460, 1466 (N.D. Cal. 1994) (dismissing NIED

1    claim based on promotions, demotions, and criticism of work practice: "where the conduct

2    alleged is intentional, it cannot be used as a basis for a negligent infliction of emotional distress

3    claim").

4         56.    And, for negligence and NIED claims, Plaintiff "must still plead the traditional

5    elements of negligence, including duty, breach of duty, causation, and damages." *Cohen v. Chau*,

6    No. 19-cv-03936, 2019 WL 6655392, at *6 (C.D. Cal. July 23, 2019) (citing *Christensen v.*

7    *Superior Ct.*, 54 Cal.3d 868, 884 (1991) and *Macy's Cal., Inc. v. Superior Ct.*, 41 Cal. App. 4th

8    744, 748 (1995)).

9         57.    Plaintiff cannot and does not allege that the Individual Defendants, his co-

10   employees, owed him a negligence-based duty. This District Court has held that "co-employees

11   cannot be sued for tortious conduct undertaken in the course of job-related functions." *Robb*,

12   2005 WL 8177559, at *4 (*citing Sheppard*, 67 Cal. App. 4th at 343). Thus, under *Robb*, the

13   Individual Defendants cannot be liable for negligence-based claims based on their own alleged

14   tortious conduct as a matter of law.

15        58.    Further, specific to Plaintiff's NIED claim, California law is clear that "there is no

16   duty to avoid negligently causing emotional distress to another, and . . . damages for emotional

17   distress are recoverable only if the defendant has breached ***some other duty*** to the plaintiff."

18   *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993) (emphasis added). A duty to the

19   plaintiff may be "imposed by law, be assumed by the defendant, or exist by virtue of a special

20   relationship." *Id.* at 985. Plaintiff asserts the Individual Defendants "had a duty to refrain from

21   causing damages to Golden" and that "also had a duty to exercise due care toward Golden and to

22   refrain from carelessly, negligently, and arbitrarily inflicting emotional distress upon him."

23   Compl. ¶¶ 136, 138. But Plaintiff cannot meet this burden because he does not explain where this

24   alleged duty of care came from as to the Individual Defendants or plead any facts supporting a

25   duty. Accordingly, Plaintiff's negligence-based claims fail as a matter of law.

26        **Negligence Per Se (Cause of Action 17):**

27        59.    Courts do not recognize negligence per se as a separate cause of action. *See* CACI

28   No. 418, Presumption of Negligence per se, Sources and Authority (*citing Turner v. Seterus, Inc.*,

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332,
1441 AND 1446

27 Cal. App. 5th 516, 534 (2018) ("the doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence.")). Even if it did exist, Plaintiff would be unable to allege the requisite duty of care as set forth above. Plaintiff's negligence per se claim against the Individual Defendants cannot proceed.

### B.    The Amount in Controversy Far Exceeds $75,000.

60.    In considering the amount in controversy, what matters is the amount put in controversy by the plaintiff's complaint, not what amount the defendant will actually owe (if anything). *See Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability").

61.    The alleged amount in controversy in this action exceeds, in the aggregate, $75,000, exclusive of interest and costs. Defendants deny Plaintiff's claims in their entirety, but provide the following analysis of potential damages (without admitting liability) based on the allegations in the Complaint in order to demonstrate that Plaintiff's Complaint puts a sufficient amount "in controversy" to warrant removal under 28 U.S.C. § 1332(a).

62.    Here, Plaintiff expressly puts at least **$150,000** in controversy—double the $75,000 jurisdictional minimum. Compl. ¶ 33. Various of Plaintiff's claims seek "a loss of income" or "lost compensation." Compl. ¶¶ 39, 45, 52, 58, 66, 74, 88, 100, 106, 112, 119, 126, 132, 141. Plaintiff alleges that Microsoft terminated his employment "just days before" he was to vest $150,000 in stock options, and insinuates Microsoft wrongfully terminated his employment so he would forfeit the $150,000 in income. Compl. ¶ 33. Thus, based on this allegation alone, the $75,000+ amount in controversy requirement is met.

63.    Additionally, the Complaint requests special damages against each Defendant (including lost wages, lost income, lost benefits, lost earning capacity), general damages for physical and mental pain and suffering and emotional distress, punitive damages, and reasonable attorneys' fees. Compl. ¶¶ 39, 41, 45, 47, 52, 54, 58, 60, 66, 68, 74, 76, 82, 83, 88, 89, 94, 100, 106, 107, 112, 113, 119, 120, 126, 132, 133, 141, 146, 158, & "Prayer for Relief".

64.     Even when the amount in controversy is not readily apparent from a complaint (which, as discussed above in paragraph 62 of this Removal pleading, it is), "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (*quoting Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). The burden is not "daunting," and "a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (citation omitted); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *5 (C.D. Cal. May 9, 2011) (same). The preponderance burden is satisfied where the defendant's calculations are conservative, made in good faith, and based on evidence wherever possible. *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009). Thus, Defendants are only required to establish that it is more likely than not that the amount in controversy exceeds $75,000.

65.     **Lost Base Salary**. Plaintiff is seeking backpay in the form of his lost base salary. At the time Plaintiff was terminated, he earned an annual salary of $219,569.00, or $601.56 per day ($219,569.00/365 days). Rosenbloom Decl. ¶ 6; *see also* Compl. ¶ 22. The Complaint does not allege the length of time for which Plaintiff is seeking backpay; however, conservatively estimating that Plaintiff is seeking lost base salary for at least the 729 days that passed from the date of his last termination (June 28, 2021) through the date he filed the Complaint (June 27, 2023), the amount of backpay in the form of lost base salary that is in controversy totals **$438,537.24** (729 x $601.559).[1]

66.     **Lost Bonuses**. Plaintiff is also seeking lost income in the form of lost bonuses. *See* Compl. ¶ 22 (Plaintiff's "compensation for his employment with Microsoft consisted of . . . an annual incentive bonus of approximately $50,000 . . . paid at the end of each fiscal year"). Microsoft's fiscal year ends June 30th of each year. Rosenbloom Decl. ¶ 7. Conservatively

---

[1] Even assuming a *very* conservative estimate of six months back pay through the end of 2021—approximately one and a half years *__before__* Plaintiff filed the Complaint—that figure alone is approximately $109,000 and well above the jurisdictional minimum to satisfy the amount in controversy requirement.

estimating that Plaintiff is seeking the two annual bonuses that he could have been eligible to earn from the time of his termination in June 2021 through the date he filed the Complaint in June 2023, the amount of backpay in the form of lost annual bonuses that is in controversy totals **$100,000**.

67.     **Front Pay**. Plaintiff is seeking future lost earnings. While an award of front pay may be speculative, juries have awarded such damages in similar cases, and courts have held that a plaintiff could receive at least two years of front pay. *See Horsford v. Board of Trustees of Calif. State Univ.*, 132 Cal. App. 4th 359, 388-89 (2005) (affirming remittitur of jury's award of 10 years of front pay to two years of front pay). Therefore, Plaintiff could potentially recover at least another **$439,138.00** ($219,569.00 annual pay x 2) in front pay alone.

68.     **Emotional Distress**. Plaintiff brings a claim for IIED and NIED, and his Complaint also purports to seek emotional distress damages for 10 of the 18 causes of action asserted. Compl. ¶¶ 39, 45, 52, 58, 66, 74, 82, 88, 132, 141. Plaintiff claims he suffered severe emotional distress, anguish, pain and suffering, humiliation, indignity, and personal embarrassment. *Id*. A defendant may use damage awards in similar cases to establish that the amount in controversy exceeds $75,000. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2002). Juries in California have awarded well in excess of $75,000 for emotional distress damages in discrimination and wrongful termination cases similar to this action. *See, e.g.*, *Qiu v. Three Rivers Provider Network, Inc.*, Case No. 37-2017-00035446-CU-WT-CTL, 2019 WL 7762121 (Cal. Super. Ct. Oct. 15, 2019) (awarding $2.5 million for retaliation claim under Labor Code section 1102.5 and wrongful termination); *Williams v. Wyndham Vacation Ownership*, No. CGC-12-526187, 2017 WL 1045193 (Cal. Super. Ct. Jan. 23, 2017) (awarding $1.3 million on retaliation claim brought under Labor Code section 1102.5); *Roby v. McKesson*, 47 Cal.4th 686, 699 (2009) (awarding $2.4 million for three counts of wrongful termination and one count of harassment); *Bradley v. Cal. Dep't of Corrections & Rehab.*, 158 Cal. App. 4th 1612, 1618 (2008) (awarding $300,000 for harassment claim). Thus, given Plaintiff's claimed lost wages, it is reasonable to conclude that a jury may award **in excess of $75,000** for emotional distress damages alone. *See, e.g.*, *Kroske*, 432 F.3d at 980 (affirming determination that, in light

of the plaintiff's alleged lost wages of at least $55,000, emotional distress damages could be valued at $25,000).

69.     **Punitive Damages**. The amount in controversy "may include punitive damages when they are recoverable as a matter of law." *Simmons*, 209 F. Supp. 2d at 1033 (citations omitted). Punitive damages are available under the FEHA. *Id.*; *Matthews v. Happy Valley Conf. Center, Inc.*, 43 Cal. App. 5th 236, 268 (2019); Cal. Gov't Code § 3294. District courts within the Ninth Circuit have described a 1:1 ratio of punitive to compensatory damages as "conservative" for purposes of assessing the amount in controversy requirement. *E.g.*, *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *see also Zapata Fonseca v. Vigo Importing Co.*, No. 5:16-cv-02055-EJD, 2016 WL 6249006, at *2 (N.D. Cal. Oct. 26, 2016); *Bayol v. Zipcar, Inc.*, No. 14-cv-02483-THE, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015). Thus, considering Plaintiff's claimed lost wages, it is reasonable to conclude that a jury may award **in excess of $75,000** for punitive damages.

70.     **Attorneys' Fees**. Attorneys' fees must be included in determining whether the amount in controversy is satisfied, which in the Ninth Circuit is reasonably assumed to be at least 25% of any judgment in favor of the plaintiff. *Altamirano v. Shaw Indus, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal., June 14, 2013) (for amount in controversy, it is reasonable to include 25% of the amount in controversy on the claims for relief to account for attorneys' fees) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). Here, the potential attorneys' fees on Plaintiff's claim for lost wages alone ($688,537.24), which includes back pay ($438,537.24), lost bonuses ($100,000) and lost stock awards ($150,000) is **$172,134.31.**

71.     **Total Amount in Controversy**. Taking into account Plaintiff's claims for back pay, future lost earnings, emotional distress damages, punitive damages, and attorneys' fees, the above conservative calculations show that the amount in controversy for Plaintiff's claims is at least **$1,449,809.55**. The amount in controversy requirement is plainly met here.

///

///

1   IV.     **VENUE**

2        72.     This action was originally brought in the Superior Court of the State of California,

3   County of Santa Clara, and venue thus lies in the Northern District of this Court, San Jose

4   Division. *See* 28 U.S.C. §§ 84(c), 1391(a), and 1441(a), and Local Rule 3-2(c), (d).

5   V.      **SERVICE ON THE STATE COURT**

6        73.     Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of this Notice

7   of Removal in the United States District Court for the Northern District of California, Defendants

8   will give written notice of such filing to Plaintiff's Counsel of Record and a copy of the Notice of

9   Removal will be filed with the Clerk of the Santa Clara County Superior Court.

10       WHEREFORE, this action is hereby removed to this Court from the Superior Court of the

11   State of California, County of Santa Clara.

12   Dated: August 18, 2023                    LYNNE C. HERMLE
                                                Orrick, Herrington & Sutcliffe LLP
13

14

15   By: _____*/s/ Lynne C. Hermle*_____
                                                LYNNE C. HERMLE
16                                              Attorneys for Defendants
                                                MICROSOFT CORPORATION AND
17                                              MARK WEISS

18

19

20

21

22

23

24

25

26

27

28