UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN GOLDEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICROSOFT CORPORATION, et al.,<br><br>　　　　Defendants. | Case No.  23-cv-04224-PCP<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 12, 13, 23 |

Plaintiff Bryan Golden filed this action against defendants Microsoft Corporation, Mark Weiss, Izumi Kawahara, Steve Miczak, Garrett Faulkner, and DOES 1-20 in Santa Clara Superior Court on June 27, 2023. Mr. Golden alleges age, sex, and gender discrimination and other violations of California law relating to his termination from Microsoft in June 2021. On August 18, 2023, the then-served defendants, Microsoft and Mr. Weiss, filed a timely notice of removal with this Court, contending that the individual defendants (all of whom, like Mr. Golden, are California residents) were fraudulently joined and should have their citizenship disregarded in determining jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b). Before the Court are Mr. Golden's motion to remand, Dkt. No. 23, Microsoft's motion to dismiss and strike the complaint, Dkt. No. 12, and Mr. Weiss's motion to dismiss and strike the complaint, Dkt. No. 13. Because the Court lacks subject matter jurisdiction over the action, the Court grants Mr. Golden's motion to remand and denies the motions to dismiss and strike without prejudice.

**BACKGROUND**

Mr. Golden is a 57-year-old resident of Santa Clara County, California, and a former employee of Microsoft. Compl., Dkt. No. 1-1 ¶¶ 2, 4. Microsoft is a technology company incorporated under the laws of Washington with its principal place of business in Redmond, Washington. *Id*. ¶ 5; Dkt. No. 1, at 6. Individual defendants Weiss, Kawahara, Miczak, and

1   Faulkner are all residents of California and were employees of Microsoft working under the
2   supervision of Mr. Golden during the time at issue in this case. *Id*. ¶¶ 6–9.
3       Mr. Golden alleges that he was first hired by Microsoft around May 31, 2015 to serve as a
4   Senior Prototype Engineer in Microsoft's HoloLens Model Shop in Mountain View, CA. *Id.* ¶ 14.
5   Although he was initially a contractor, he signed an employment agreement with Microsoft to
6   begin full-time employment on June 28, 2015. *Id.* ¶¶ 14, 17. Mr. Golden asserts that Microsoft
7   promoted him to Director of the HoloLens Model Shop in September 2019, a role in which he
8   oversaw and supervised the creation of prototype models. *Id.* ¶ 18. Mr. Golden received annual
9   compensation of approximately $219,000 with an annual incentive bonus of about $50,000. *Id.*
10  ¶ 22. Until his final performance review in May 2021, Mr. Golden alleges that his biannual
11  performance reviews at Microsoft were "stellar" and "overwhelmingly positive." *Id.* ¶ 20.
12      Mr. Golden alleges that, while he was employed by Microsoft, the individual defendants
13  colluded "to defame and remove him from the company due to his age, sex and gender,"
14  ultimately leading to his unlawful termination by Microsoft on June 28, 2021. *Id.* ¶¶ 2, 31. "For
15  many years," he claims, he "was unaware that …. his team members were repeatedly attempting to
16  paint him as an ill-tempered director who offended with the most minor acts and statements." *Id.*
17  ¶ 26.
18      Mr. Golden alleges that in early 2021, a non-defendant Microsoft employee reported Mr.
19  Golden to his manager, claiming that he was afraid to visit the HoloLens Model Shop after Mr.
20  Golden "sternly reminded [him] that Golden was supposed to be informed if guests were going to
21  be brought into the shop" pursuant to COVID-19 safety protocols. *Id.* ¶ 24. That incident
22  prompted an investigation by Microsoft's Human Resources Department in May 2021 and "was
23  raised as an issue in [Mr. Golden's] last performance review at Microsoft that same month." *Id.*
24  ¶ 25. Mr. Golden alleges that Mr. Weiss "accused [him] of inappropriately using his wife and kids
25  as a conversation topic" after Mr. Golden advised him that he "needed to handle this issue" of
26  "get[ing] his kids out of bed … so that he could get to work on time." *Id.* ¶ 27. Mr. Golden next
27  asserts that, "after ordering sandwiches for lunch one day, [he] commented that someone must
28  have taken his sandwich by mistake" without accusing, raising his voice, or appearing upset. *Id.*

2

¶ 28. He claims that "several members of his team … told him they were uncomfortable with how upset he had gotten over the sandwiches." *Id.* Similarly, Mr. Golden alleges that, after making "a completely innocent comment, inviting a female co-worker to move closer to him while seated at a four-person table in order to make room for a fifth person," the individual defendants capitalized on this occurrence "to show a pattern of misconduct by [him]." *Id.* ¶ 29. He alleges that they "falsely reported these incidents and other alleged comments … to Microsoft in an attempt to get him fired, in significant part because [he] is an older man." *Id.* ¶ 30. After these reports and the Human Resources investigation, Microsoft terminated Mr. Golden's employment on June 28, 2021, just days before approximately $150,000 in Microsoft stock would vest. *Id.* ¶¶ 2, 31, 33. According to Mr. Golden, "Microsoft never clearly communicated the findings of this investigation or the precise reasons for [his] termination" to him. *Id.* ¶ 31.

On these allegations, Mr. Golden filed a complaint against Microsoft with the California Department of Fair Employment and Housing, which issued a right-to-sue notice on June 27, 2023. *Id.* ¶ 13; Dkt. No. 1-1, at 32, 34. That same day, Mr. Golden filed this action asserting 18 total causes of action and seeking to recover damages based on violations of the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12900 *et seq.*; California Business and Professions Code § 17200 *et seq.*; and California common law. Compl. ¶¶ 3, 34–164.

Mr. Golden asserts 9 of his 18 claims against individual defendants Weiss, Kawahara, Miczak, and Faulkner: harassment and hostile work environment based on age in violation of FEHA, Cal. Gov't Code § 12940(j)(1) (Count 5); harassment and hostile work environment based on sex and gender in violation of FEHA, Cal. Gov't Code § 12940(j)(1) (Count 6); inducing breach of contract (Count 11); intentional interference with contractual relations (Count 12); intentional interference with prospective economic advantage (Count 13); negligent interference with prospective economic advantage (Count 14); intentional infliction of emotional distress (Count 15); negligence, including negligent infliction of emotional distress (Count 16); and negligence per se (Count 17).

On August 18, 2023, the then-served defendants Microsoft and Mr. Weiss filed a notice of removal with this Court contending that all individual defendants were fraudulently joined and

1  should have their citizenship disregarded in determining jurisdiction under 28 U.S.C. § 1332 and

2  28 U.S.C. § 1441(b). Dkt. No. 1, at 7. In support, they filed declarations from Weiss, Kawahara,

3  Miczak, and Faulkner attesting to their age and summarily denying the conduct alleged in the

4  complaint. Weiss Decl., Dkt. No. 1-3; Kawahara Decl., Dkt. No. 1-5; Miczak Decl., Dkt. No. 1-4;

5  Faulkner Decl., Dkt. No. 1-6.[1]

6  On August 25, 2023, Microsoft and Mr. Weiss both moved to dismiss and to strike the

7  complaint. Dkt. Nos. 12, 13. On September 15, 2023, Mr. Golden moved to remand this case to

8  state court. Dkt. No. 23.

## LEGAL STANDARD

28 U.S.C. § 1441(a) permits defendants to remove "any civil action brought in a State court of which the district courts … have original jurisdiction." Where "the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court … provided that no defendant 'is a citizen of the State in which such action is brought.'" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (quoting 28 U.S.C. §§ 1441(b)). "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower ex rel Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).[2]

Fraudulent joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare*, 889 F.3d at 548 (citation omitted). Only the second basis

---

[1] As of August 17, 2023, Defendant Weiss was 50 years old. Weiss Decl., Dkt. No. 1-3, at ¶ 5. As of August 17, 2023, Defendant Kawahara was 41 years old. Kawahara Decl., Dkt. No. 1-5, at ¶ 5. As of August 17, 2023, Defendant Miczak was 51 years old. Miczak Decl., Dkt. No. 1-4, at ¶ 5. As of August 17, 2023, Defendant Faulkner was 32 years old. Faulkner Decl., Dkt. No. 1-6, at ¶ 6.

[2] Because the Court concludes that the individual defendants were not fraudulently joined, it need not determine whether the service of Mr. Golden's complaint on Mr. Weiss prior to removal triggered the "forum defendant rule" that would have prohibited removal even if complete diversity were present. *See, e.g.*, *Ekeya v. Shriners Hosp for Child., Portland*, 258 F. Supp. 3d 1192, 1200 (D. Or. 2017) (declining to decide whether the theory of fraudulent joinder can be used to overcome the forum-defendant rule).

4

1  is at issue here. Fraudulent joinder is established on that basis if an "individual[ ] joined in the
2  action cannot be liable on any theory." *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313,
3  1318 (9th Cir. 1998)). "But if there is a *possibility* that a state court would find that the complaint
4  states a cause of action against any of the resident defendants, the federal court must find that the
5  joinder was proper and remand the case to the state court." *Id.* (cleaned up). In the Ninth Circuit, a
6  "defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a
7  'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" *Id.* The
8  Court need only make a "summary inquiry" to identify whether there is any possibility that the
9  plaintiff can state a claim against the defendant because "the inability to make the requisite
10 decision in a summary manner itself points to an inability of the removing party to carry its
11 burden." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (cleaned up).

12 "[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are
13 not equivalent." *Grancare*, 889 F.3d at 549. Even "[i]f a defendant cannot withstand a Rule
14 12(b)(6) motion, the fraudulent inquiry does not end there. For example, the district court must
15 consider … whether a deficiency in the complaint can possibly be cured by granting the plaintiff
16 leave to amend." *Id.* at 550. The party seeking removal is entitled to present additional evidence to
17 demonstrate that a defendant was fraudulently joined. *See id.* at 549.

**ANALYSIS**

**I.    The Court Lacks Subject Matter Jurisdiction.**

20 Unlike state courts, "[f]ederal courts are courts of limited jurisdiction [and] possess only
21 that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*,
22 511 U.S. 375, 377 (1994). As potentially relevant here, Congress has authorized federal
23 jurisdiction only in cases that present a federal question, *see* 28 U.S.C. § 1331, or where there is
24 complete diversity of citizenship and the amount in controversy exceeds $75,000, *see* 28 U.S.C.
25 § 1332.

26 The parties do not dispute that federal question jurisdiction does not exist because Mr.
27 Golden's complaint arises solely under California law. *See* 28 U.S.C. § 1331. Microsoft and Mr.
28 Weiss instead removed this action on the basis of this Court's purported diversity jurisdiction.

1  Their theory is that individual defendants Weiss, Kawahara, Miczak, and Faulkner, all of whom
2  are California residents, were fraudulently joined as sham defendants. Dkt. No. 1, at 7. In support
3  of their fraudulent joinder theory, Microsoft and Mr. Weiss argue that Mr. Golden "asserts nine
4  causes of action against the Individual Defendants, all of which are incurably deficient." *Id.* As a
5  result, they argue, the individual defendants' citizenship may be disregarded, and complete
6  diversity exists between Mr. Golden, a California resident, and Microsoft, a Washington resident.
7  *Id.* at 6–7.[3] Microsoft and Mr. Weiss's argument fails, however, because there is at a minimum a
8  possibility that a state court could conclude that Mr. Golden has stated a viable FEHA harassment
9  claim against the individual defendants.

10  To state a prima facie claim for harassment under FEHA, the plaintiff must allege (1)
11  membership in a protected group; (2) that the plaintiff was subjected to harassment because of that
12  membership, and (3) that "the harassment was so severe that it created a hostile work
13  environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244. Unlike Title VII, FEHA
14  permits employees to pursue harassment claims against individuals as well as employers. *See* Cal.
15  Gov't. Code § 12940(j)(3).

16  Mr. Golden alleges that he was harassed based on age, sex and gender, which are protected
17  groups under FEHA. *See* Compl. ¶¶ 2, 63, 71. Mr. Golden complains that the younger individual
18  defendants colluded "to defame and remove him from the company due to his age, sex and
19  gender," *id.* ¶ 2, and engaged in "repeated[] attempt[s] to paint him as an ill-tempered director who
20  offended with the most minor acts and statements," *id.* at ¶ 26, which taken together created a
21  hostile work environment conveying a message of age-, sex-, and gender-based antagonism, *see*
22  Dkt. No. 23, at 13–14; Dkt. No. 29, at 8. On their face, these allegations are sufficient to state a

---

[3] Microsoft contends that the Court may ignore the citizenship of the unserved individual defendants in evaluating whether complete diversity exists here. Dkt. No. 28, at 1. The Ninth Circuit has rejected that position, holding instead that "[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *Clarence E. Morris*, *Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969); *see also Ross v. United Airlines*, Inc., No. 2:22-CV-01532-SB-GJS, 2022 WL 1302680, at *2 (C.D. Cal. Apr. 30, 2022). Accordingly, to establish jurisdiction the defendants must show that Mr. Golden cannot possibly state a claim against any of the individual named defendants.

1  FEHA cause of action against the individual defendants, and it is at least possible that a state court
2  would permit those claims to proceed, particularly given the different pleading standards that
3  apply in California state courts, *see Marina Pac. Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*,
4  81 Cal. App. 5th 96, 104–05 (2022) (noting that California state courts must assume the truth of
5  all facts alleged in the complaint regardless of their improbability), and the possibility that Mr.
6  Golden could amend his complaint to address any deficiencies the state court might identify.
7       None of Microsoft and Mr. Weiss's arguments to the contrary are persuasive.
8       Microsoft and Mr. Weiss cite *Janken Hughes Elecs.*, 46 Cal. App. 4th 55 (1996), and argue
9  that reporting conduct to Microsoft's Human Resources Department constitutes "personnel
10 management activity" that "cannot constitute harassment" as a matter of law. Dkt. No. 28, at 12.
11 In *Janken*, four employees brought claims against individual supervisory employees for age
12 discrimination in violation of FEHA. The appellate court went to great lengths to distinguish
13 between harassment and discrimination under FEHA, concluding that "it was the intent of the
14 Legislature to place individual supervisory employees at risk of personal liability for personal
15 conduct constituting harassment, but that it was not the intent of the Legislature to place individual
16 supervisory employees at risk of personal liability for personnel management decisions later
17 considered to be discriminatory." *Id.* at 62. The court concluded that "the Legislature's differential
18 treatment of harassment and discrimination is based on the fundamental distinction between
19 harassment as a type of conduct not necessary to a supervisor's job performance, and business or
20 personnel management decisions—which might later be considered discriminatory—as inherently
21 necessary to performance of a supervisor's job." *Id.* at 62–63.
22      The defendants' reliance on *Janken* is inapt for at least two reasons.
23      First, *Janken* focused on "personnel *management* actions" uniquely within the purview of
24 supervisory employees. *Id.* at 64 (emphasis added). The appellate court was concerned that
25 holding supervisory employees liable for such decisions would place them in "a conflict [that]
26 present[s] sobering implications for the effective management of our industrial enterprises and
27 other organizations of public concern," because it "would coerce the supervisory employee not to
28 make the optimum lawful decision for the employer … [but instead] make whatever decision was

least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended." *Id.* at 74–75. Unlike *Janken*, this case involves alleged decisions and conduct by nonsupervisory, subordinate employees, and the concerns raised in *Janken* do not extend to actions by subordinates who are not making personnel decisions of that sort, even where they report a supervisor's conduct pursuant to company policy. Indeed, given that a repeated pattern of filing baseless personnel reports could provide a powerful means for creating an unlawful hostile work environment for a coworker, it is hard to imagine that the Legislature (which has expressly made individual employees liable for their own harassing behavior, *see* Cal. Gov't. Code § 12940(j)(3)) intended to immunize such conduct.

Second, even if reporting a supervisor's conduct according to company policy did constitute "personnel action" for the purposes of *Janken*, a state court might conclude that Mr. Golden has alleged conduct that was not necessary to any employee's performance of their job, such as the individual defendants' alleged collusion and defamation.

The defendants next argue that *Sheppard v. Freeman*, 67 Cal. App. 4th 339 (1998), recognized a co-employee privilege that protects an employee who reports a co-worker's conduct under the terms of an employer's policies. *See* Dkt. No. 28, at 13–15. Relying on *Sheppard*, the defendants conclude that "reporting of potential misconduct that leads to an employer's investigation—regardless of whether the Plaintiff disagrees with the substance of the report or believes it improperly motivated—cannot constitute harassment because it is personnel action delegated to employees and necessary for the company's business." *Id.* at 13.

*Sheppard* does not apply here. In that case, an airline employee sued his coworkers individually for interference with contract and prospective economic advantage, libel, and intentional infliction of emotional distress, all based on their alleged conduct leading to his termination from the airline. *Sheppard*, 67 Cal. App. 4th at 342. The court held that "*except where a statutory exception applies*, an employee or former employee cannot sue other employees based on their conduct relating to personnel actions." *Id.* (emphasis added). Rather than "create 'a sweeping new immunity,'" the opinion "properly limit[ed] the 'piling on' of boundless

8

1  *nonstatutory tort claims.*" *Id.* at 346 n.6 (emphasis added). The court clarified that its decision

2  "d[id] not purport to limit" statutory causes of action, including those brought pursuant to FEHA.

3  *Id.* The court specifically held that its holding did not extend to the plaintiff's libel claim because

4  "the right to sue for libel is governed by statute, and … the Legislature has prescribed the

5  circumstances under which this cause of action and the defenses and privileges pertaining thereto,

6  may lie." *Id.* at 342. The Court, therefore, reversed the judgment in favor of the coworkers only as

7  it pertained to the claim for libel. *Id.*

   Like the right to sue for libel, the right to sue for harassment under FEHA is governed by statute and thus falls within the "statutory exception" to *Sheppard*'s co-employee privilege. Under Cal. Gov't. Code § 12940(j)(3), "[a]n employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Because a statutory exception applies here, *Sheppard* does bar Mr. Golden's FEHA harassment claims against the individual defendants.

   Finally, the defendants argue that Mr. Golden cannot allege any age or gender nexus because the individual defendants' sworn statements "indicate they have never joked or spoken to anyone about Plaintiff's age, sex, or gender." *See* Dkt. No. 28, at 16 (citing the declarations). While the defendants are correct that the absence of a nexus between the alleged harassment and a plaintiff's membership in a protected category would negate a FEHA claim, *see Jones v. Dep't. of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1378 (2007), the declarations denying the underlying conduct do not prove that Mr. Golden cannot assert a viable claim here. "[A] denial, even a sworn denial, of allegations does not prove their falsity." *Grancare*, 889 F.3d at 551. Mr. Golden has alleged on information and belief that the individual defendants are younger than him and that his age, sex and gender were the motivating factors for their seeking to "defame" him and have him fired. Compl. ¶¶ 2, 30. Particularly given the standards that a California state court would apply in evaluating the viability of Mr. Golden's claims, "there is a non-fanciful possibility that [he] can state a claim under California law [for harassment] against the non-diverse defendants." *Macey v.*

9

*Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).[4]

For these reasons, the Court cannot conclude "to a near certainty" that Mr. Golden's joinder of the individual defendants was fraudulent. *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 586 (C.D. Cal. 1998) (citation omitted). And because the individual defendants are properly joined California citizens, complete diversity is lacking, this Court lacks jurisdiction, and Mr. Golden's lawsuit must be remanded to state court.

## CONCLUSION

For the foregoing reasons, the Court grants Mr. Golden's motion to remand. The pending motions to dismiss and strike the complaint are denied without prejudice. The Clerk is ordered to remand this case to Santa Clara County Superior Court.

**IT IS SO ORDERED**.

Dated: March 29, 2024

P. Casey Pitts
United States District Judge

---

[4] Because there is a possibility that Mr. Golden can state a FEHA harassment claim against the individual defendants, the Court need not address the remaining claims against them. *See Grancare*, 889 F.3d at 548 ("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.").

10